UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:                                             Case No.  11-81547
                                                   Chapter 7
CHRISTOPHER Q. DEAN,

    Debtor.

_____

JAMES ALLISON
CELIA ALLISON,

    Plaintiffs,

v.                                                 Adv. Proc. 12-08005

CHRISTOPHER Q. DEAN,

    Defendant.

### MEMORANDUM OPINION

In this complaint, James and Celia Allison seek to have Christopher Q. Dean's discharge denied pursuant to 11 U.S.C. § 727(a)(2)(A)(property transfer with the intent to hinder, delay or defraud) and § 727(a)(4)(false oath).  Further, the Allisons seek to have the debt owed them by Dean held nondischargeable pursuant to 11 U.S.C. § 523(a)(6)(willful and malicious injury to property of another).  Trial was held in Opelika, Alabama on March 25, 2013.  For the reasons that follow, judgment in favor of Dean will enter as to all three claims.

### Jurisdiction

The Court's jurisdiction in this adversary proceeding derives from 28 U.S.C. § 1334 and from the general order of the United States District Court for this district referring title 11 matters to the Bankruptcy Court.

Because this proceeding is one to determine the debtor's right to a discharge in general and also to determine the dischargeability of a particular debt, this is a core proceeding under 28 U.S.C. § 157(b)(2)(J) and (I), respectively. In core proceedings, the Bankruptcy Court has jurisdiction to enter a final judgment.

## Factual Findings

Dean owns real estate at 1304 Fitzpatrick Avenue, Opelika, Alabama. He purchased that property in 1988 or 1989.

The Allisons own the real estate adjacent to Dean's and reside in a home situated thereon. The Allisons were living there when Dean acquired the adjacent property. The common lot line of the Allison/Dean property is approximately 210 feet.

In 1990, Dean had a concrete-block, retaining wall built along approximately one-half the length of the common lot line with the Allisons. That wall was built almost exactly along the lot line with only inches, if any, setback.

The actual construction of the wall was performed by William Bryant, a contractor who regularly built masonry retaining walls. When the construction was complete, Dean backfilled on his side of the wall with dirt and clay.

Prior to the erection of the wall, Dean did not obtain a building permit from the City of Opelika. He testified that he inquired about a permit but was advised by someone at the City that a permit was not required to build a retaining wall.

This first stretch of retaining wall remains standing today. It does, however, bear signs of failure. During times of rainy weather, water can be seen seeping through the joints between the blocks. In addition, the wall is bulging in places.

In 1993, Dean extended the retaining wall along the remainder of the common line with the Allisons. Again, Dean employed William Bryant to perform the actual construction. As with the first stretch of wall, this

extension was built almost exactly on the property line, without setoff, and Dean backfilled on his side with dirt and clay. With the completion of this second project, the retaining wall stood along and across the entire length of the Allison/Dean common property line. The wall in places rose to a height of over 10 feet.

In 1994 or 1995, a portion of the retaining wall collapsed. The break occurred in that portion of the wall that had been most recently built. Dean hired William Bryant to repair the collapsed wall. However, within a few months of the repair, another portion of the wall fell. This second collapse also occurred in that portion of the wall that was most recently built. Again, Dean hired William Bryant to make repairs.

While the repair of the second collapse was underway, the Allisons told Dean that the repairs would have to be accomplished from his, Dean's, side of the wall. According to the Allisons, this upset Dean because the cost of making the repairs exclusively from Dean's side of the property would be much more than if work could proceed from the Allisons' side. Thereafter, the relations between Dean and the Allisons were strained.

During the course of making the second collapse repairs, Dean had, over Ms. Allisons' objections, an eight inch PVC pipe inserted through the wall at its base. This pipe allowed water to drain from Dean's side of the property onto the Allisons' property. While the pipe drained water from Dean's property onto the Allisons', by removing the water from one side of the wall, the drain pipe actually made the wall sounder with less likelihood of collapse.

In 2005, Dean petitioned the Opelika Planning and Zoning Board for a variance which would allow him to build a commercial building on his property. Ms. Allison appeared at the public hearing and objected to the Board's granting Dean the variance. Nevertheless, the variance was granted allowing Dean to construct a commercial building on his property on condition that he: 1) build a water retention pond on his property, 2) have an engineer inspect the existing retaining wall and 3) have a compaction test done on the soil.

The retaining wall remained intact until January 24, 2010, when a 31 foot section collapsed. Debris from the wall and its earthen backfill

spilled onto the Allisons' property.

Following this third collapse, Dean hired Auburn Structural Design, Inc., an engineering firm, to prepare plans for the wall's repair. Dean submitted those plans to the City of Opelika, and the City issued Dean a repair permit on February 24, 2010. There is no evidence that the issuer of the repair permit considered any of the three conditions enumerated by the Planning and Zoning Board in conditionally granting Dean a variance. Thereafter, Dean began making the repairs according to the engineer's plans. However, on August 19, 2010, the City of Opelika's mayor, its building inspector and police officers came to the site and requested that repairs stop until issues with the Allisons were resolved. Thereafter, Dean stopped repair work but installed silt retaining fences in the area where the wall was breached.

Regressing somewhat in time to April 2010, an inspection of the retaining wall was made by a civil engineer, Timothy Simpson. Mr. Simpson testified that the wall, as originally built, had too little steel reinforcement. Further, there were little signs that the cells within the concrete blocks had been filled with cement or that a water sealant had been applied to the wall. In short, Mr. Simpson opined that these design and construction defects led to the 2010 collapse rather than the drain pipe that Dean had placed into the wall.

In the summer of 2010, the Allisons filed suit against Dean in the Circuit Court of Lee County, Alabama. There, the court found that Dean had caused substantial damage to the Allisons' property and a default judgment entered against Dean and fixing the Allisons' damages at $142,300.00.

Although begrudgingly, both Celia and Ronald Allison admitted that they did not believe that Dean erected the retaining wall with the intent that it should collapse and damage their property.

Legal Conclusions

The § 727(a)(2)(A) and § 727(a)(4)(A) Claims:

In their complaint, the Allisons allege that Dean's discharge should be

denied, pursuant to § 727(a)(2)(A), because he made certain prepetition property transfers with the intent to hinder, delay, or defraud a creditor or officer of the estate. In addition, the Allisons seek denial of Dean's discharge, pursuant to § 727(a)(4)(A), contending that Dean made false oaths and accounts in connection with the bankruptcy proceeding in both his petition schedules and his testimony at creditors' meetings. At trial, however, the Allisons did not present relevant evidence on these two claims.

Section 727(a) of the Bankruptcy Code "may be used to deny a discharge to dishonest debtors, however unfortunate." *In re Moeritz*, 317 B.R. 177, 182 (Bankr. M.D. Fla. 2004)(quoting *In re Matus*, 303 B.R. 660, 670 (Bankr. N.D. Ga. 2004).

Those objections to discharge, however, should be "liberally construed in favor of debtors and strictly against objectors in order to grant debtors a fresh start." *In re Zwirn*, 2005 WL 1978510, at *2 (Bankr. S.D. Fla.)

Further, "Rule 4005 of the Federal Rules of Bankruptcy Procedure provides that '[a]t trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection.'" *In re Forness*, 334 B.R. 724, 729 (Bankr. M.D. Fla. 2005)(quoting *In re Zwirn*, 2005 WL 1978510, at *2). "The objector must establish all required elements of the objection by a preponderance of the evidence." *In re Zwirn*, 2005 WL 1978510, at *2.

In this case, the Allisons have failed to satisfy their burden of proof under the § 727(a)(2)(A) and § 727(a)(4)(A) claims.

<u>The § 523(a)(6) Claim</u>

Under 11 U.S.C. § 523(a)(6), a debt for willful and malicious injury is not dischargeable in bankruptcy. The statute provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (6) for willful and malicious injury by the debtor to

another entity or to the property of another entity.

The plaintiff bears the burden of proving the elements of 11 U.S.C. § 523(a)(6) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279 (1991).

The Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998) addressed the willful and malicious injury exception of § 523(a)(6). In that case, the Court confronted the question of whether the § 523(a)(6) discharge exception covered "acts, done intentionally, that cause injury ...., or only acts done with the actual intent to cause injury...." *Id.* at 61. The Court answered the question holding that only acts done with the actual intent to cause injury fall within the § 523(a)(6) exception. *Id.* A willful, intentional injury does not encompass a reckless or negligent injury. *Id.* at 64. *See also Hope v. Walker (In re Walker)*, 48 F.3d 1161 (11th Cir. 1995)(holding that it is not sufficient that the debtor intentionally committed an act which results in injury if the injury itself was neither intended nor substantially certain to result from the act).

Therefore, the issue presented to the court is whether Dean committed acts with the subjective intent to cause injury to the Allisons. Of course, the debtor's subjective intent in an action under § 523(a) may be inferred from surrounding circumstances. *In re Guthrie*, 265 B.R. 253, 265 (Bankr. M.D. Ala. 2001)(Sawyer, J.).

In this case, it is plain to the court that Dean's acts of constructing a retaining wall in 1990 and repairing that same wall in 1994 were not undertakings done with the intent to injure the Allisons' property. Dean's motive in constructing the retaining wall was to level his property and make it more usable, not to injure his neighbors. That Dean lacked the subjective intent to injure the Allisons' property is evidenced by his efforts to clean up and make repairs following each of the three breaks in the wall. Further, the sheer length of time between the act and the injury, here about six years, leads one to conclude that the act was not done with the intent to injure.

Likewise, Dean's act of placing a drainage pipe at the base of the retaining wall was not an act done with the intent to injure the Allisons' property. Although the pipe certainly allowed water to drain onto the

Allisons' property, the purpose of placing the pipe in the wall was to relieve the pressure of the water from building up on one side of the retaining wall. By relieving that water pressure from one side of the wall, Dean actually made the wall more stable. It is the Court's view that Dean's act of diverting water onto the Allisons' property through the drainage pipe built into the wall was not done with the intent to injure the Allisons.

Dean is not a sympathetic character. At trial, he struck the court as being a sullen individual, often unresponsive to or argumentative with the plaintiffs' counsel. Without question, Dean is an inconsiderate neighbor, one who cares little of the concerns or feelings of others. He may have negligently constructed the retaining wall, and he may have failed to obtain necessary permits or to comply with building codes, yet his negligence is not actionable under § 523(a)(6). As earlier stated, for a debt to be nondischargeable under § 523(a)(6), the debtor must have acted with actual intent to injure another's property. The evidence here does not support the Allisons' § 523(a)(6) claim.

Conclusion

For the foregoing reasons, the Allisons' objection to Dean's discharge under § 727(a)(2)(A) and § 727(a)(4)(A) will be overruled. Similarly, the Allisons' objection to the dischargeability of their claim against Dean, pursuant to § 523(a)(6), will be overruled. Pursuant to Fed. R. Bankr. Proc. 9021, an order, consonant with this memorandum opinion, will enter separately.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Elizabeth McAdory Borg, Plaintiffs' Attorney
   Charles M. Ingrum, Jr., Defendant's Attorney

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:  Case No.  11-81547
 Chapter 7
CHRISTOPHER Q. DEAN,

    Debtor.

_____

JAMES ALLISON
CELIA ALLISON,

    Plaintiffs,

v.  Adv. Proc. 12-08005

CHRISTOPHER Q. DEAN,

    Defendant.

## ORDER OVERRULING OBJECTION TO DISCHARGE

In accordance with the Memorandum Opinion entered this day, the Court finds that the Allisons' objection to Dean's discharge under § 727(a)(2)(A) and § 727(a)(4)(A) is overruled. Similarly, the Allisons' objection to the dischargeability of their claim against Dean, pursuant to § 523(a)(6), is overruled.

Done this 10th day of April, 2013.

                                              /s/ Dwight H. Williams, Jr.
                                              United States Bankruptcy Judge

c: Elizabeth McAdory Borg, Plaintiffs' Attorney
    Charles M. Ingrum, Jr., Defendant's Attorney